UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RONNIE JACKSON, | ) | Case No. CV 09-2089 JC |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| Defendant. | ) | |

I.    **SUMMARY**

On March 30, 2009, Ronnie Jackson ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; March 31, 2009 Case Management Order ¶ 5.

///

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On October 26, 2005, plaintiff protectively filed an application for

7    Supplemental Security Income (SSI) benefits.  (Administrative Record ("AR") 46-

8    52).  Plaintiff asserted that he became disabled in June 1993, due to bleeding

9    ulcers, a head injury, back problems, asthma/bronchial problems, manic

10   depression, a poor memory/forgetfulness, poor eyesight and diabetes.  (AR 61,

11   64).  The ALJ examined the medical record and heard testimony from plaintiff,

12   who was represented by counsel, on September 5, 2007.  (AR 197-207).

13   On December 20, 2007, the ALJ determined that plaintiff was not disabled

14   through the date of the decision.  (AR 21-26).  Specifically, the ALJ found:

15   (1) plaintiff has had the following medically determinable impairments:  diabetes,

16   a depressive disorder, and borderline intellectual functioning (AR 23); and

17   (2) plaintiff has not had an impairment or combination of impairments that has

18   significantly limited (or is expected to significantly limit) the ability to perform

19   basic work-related activities for 12 consecutive months and therefore has not had a

20   severe impairment or combination of impairments (AR 24).

21   The Appeals Council denied plaintiff's application for review on February

22   13, 2009.  (AR 5-7).

23   ///

24   ///

25

26   [1]The harmless error rule applies to the review of administrative decisions regarding
disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
27   (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
28   application of harmless error standard in social security cases).

III.   **APPLICABLE LEGAL STANDARDS**

A.   **Sequential Evaluation Process**

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.[2]  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.[3]

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

///

_____

[2]The requirement that an impairment must have lasted or must be expected to last for a continuous period of at least 12 months is referred to as the "duration requirement."  20 C.F.R. § 416.909.

[3]To be "sufficiently severe," the medically determinable impairment or combination of impairments must, among other things, meet the duration requirement.  20 C.F.R. § 416.920(a)(4)(ii).  See supra note 2.

(4)     Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

4

953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

### C.   Step Two of the Sequential Evaluation Process

Step two is "a de minimis screening device [used] to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Applying the normal standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments.  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted).

An impairment is severe if it meets the duration requirement and significantly limits one's ability to perform basic work activities.  20 C.F.R. §§ 416.920(a)(4)(ii) 416.920(c).  An impairment is "non-severe" if it does not meet the duration requirement and/or does not significantly limit one's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a).  Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) the use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

## IV.   PERTINENT FACTS

### A.   Pertinent Medical Evidence

#### 1.   Medical Records

The record contains medical records from a Los Angeles County Department of Mental Health facility, Augustus Hawkins, for the period of April

1  22, 2005 to September 7, 2005.[4]  (AR 161-75).   As detailed below, the records

2  reflect that plaintiff visited such facility twice during the foregoing time period.

3          An initial assessment form dated April 22, 2005, and signed by clinical

4  psychologist, Dr. Karen Levine, reflects the following:   Plaintiff presented with

5  complaints of the need to relieve stress, insomnia, and memory problems he had

6  reportedly suffered from for many years, possibly subsequent to a head injury.

7  (AR 162).  He reported that he had been hospitalized in 1978 and/or 1981 after

8  PCP/alcohol-related incidents and could not work.  (AR 162).  Plaintiff was not

9  then on any medication but had reportedly taken psychotropic medications in the

10  late 1970s in the hospital.  (AR 163).  Dr. Levine initially diagnosed plaintiff with

11  diabetes and a psychotic disorder, not otherwise specified, and assigned him a

12  Global Assessment Functioning ("GAF") score of 55.[5]

13          Treatment notes for April 22, 2005 report some of the same information

14  reflected on the initial assessment form and further reflect the following:  Plaintiff

15  reportedly heard voices and saw "a black hole."  (AR 174).  The voices told him to

16  pull out his teeth with his pliers, which he had done.  (AR 175).  He had been

17  diagnosed with manic depression in 1993.  (AR 174).  He also complained of

18  decreased appetite and ability to concentrate.  (AR 175).  He wanted to apply for

19  ///

20

21  _____

22          [4]As discussed in Part IIIB, *infra*, plaintiff testified at the September 5, 2007
   administrative hearing that he visited the facility on a monthly basis and had last visited it two
23  weeks before the hearing.  (AR 202).

24          [5]A GAF score is the clinician's judgment of the individual's overall level of functioning.
   It is rated with respect only to psychological, social, and occupational functioning, without regard
25  to impairments in functioning due to physical or environmental limitations.  See American
   Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed.
26  2000) (hereinafter "DSM IV").  A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat
   affect and circumstantial speech, occasional panic attacks or moderate difficulty in social,
27  occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM
   IV at 34.
28

1   SSI, however was told by the therapist that they could not help him with obtaining
2   SSI until he had been in treatment for 9-12 months.  (AR 175).

3           Treatment notes for May 9, 2005, reflect the following:  Plaintiff presented
4   ten (10) minutes late, agitated because his bus had broken down and he had not
5   wanted to be late.  (AR 170).  He stated that he had not been sleeping well and was
6   very upset because his granddaughter had been burned in a scalding bath and he
7   had spent every night of the last few weeks at her hospital bedside.  (AR 170).  He
8   was distressed over his daughter's attitude toward his granddaughter's injury.  (AR
9   170).  He had the urge to pull his teeth out with pliers.  (AR 170).  He was
10  otherwise lucid and pleasant.  (AR 170).  The therapist asked plaintiff to come in
11  on Friday, May 13, 2005, for a medical evaluation in light of his urge to pull out
12  his teeth.  (AR 170).  A follow-up appointment was scheduled.  (AR 170).

13          Treatment notes dated May 25, 2005, reflect that plaintiff was a no show
14  and did not call.  (AR 170).

15          Treatment notes dated June 1, 2005, reflect that plaintiff was a no show.
16  (AR 173).

17          Treatment notes from Dr. Levine dated September 7, 2005, reflect that
18  plaintiff's case was closed as plaintiff had not appeared at therapy and follow-up
19  appointments scheduled for May 25, 2005 and June 1, 2005, and that the last
20  contact with him had been on May 9, 2005.  The discharge summary report
21  reflects that plaintiff had been diagnosed with a psychotic disorder, not otherwise
22  specified, alcohol dependence in remission, a head injury, and diabetes.  (AR 172).

23                    **2.    Consultative Examiners' Reports**
24          On January 13, 2006, consultative examining physician, Dr. Sean To,
25  generated a summary report of an independent internal medicine evaluation of
26  plaintiff conducted on the same date.  (AR 122-27).  As to plaintiff's mental
27  status, Dr. To reported:   "[Plaintiff] is oriented to time, place, person and purpose.
28  ///

1  Memory appears to be intact, as the [plaintiff] is able to recall relevant data
2  pertaining to the current medical condition." (AR 125).

3      On January 19, 2006, consultative examining physician, Dr. Steven I.
4  Brawer, generated a summary report of a psychological evaluation of plaintiff
5  performed on the same date. (AR 130-35). Plaintiff reported to Dr. Brawer that
6  he was mildly depressed, secondary to his medical condition, stating that he "ha[s]
7  chronic pain and [] get[s] into arguments for no reason." (AR 131). Plaintiff
8  reported no psychiatric hospitalizations and indicated that he had not received
9  outpatient psychiatric care or psychotherapy. (AR 131). Plaintiff denied ever
10  having experienced any unusual perceptual phenomena. (AR 132). Dr. Brawer
11  noted no signs of perceptual disturbance or misinterpretations of consensual
12  reality. (AR 132). Plaintiff demonstrated an adequate attention span for
13  answering interview questions and following test instructions, and during
14  performance tasks, was able to sustain concentration and work without distraction
15  for spans of up to two minutes at a time. (AR 132). Based upon the results of
16  tests performed by Dr. Brawer and the clinical data, Dr. Brawer opined that:
17  (1) given the report of occasional depressed mood, sadness over losses, and
18  irritability, plaintiff had a depressive disorder, secondary to his general medical
19  condition; (2) plaintiff's intellectual functioning was estimated to be in the
20  Borderline Range, based upon tests which reflected that he had an IQ of 74. (AR
21  134). In terms of functionality, Dr. Brawer opined:

22      Based on test results and behavioral presentation, the claimant
23      would be able to learn a simple, repetitive task but would have
24      difficulty performing detailed, varied or complex tasks. His ability to
25      sustain attention and concentration for extended periods of time may
26      be mildly diminished, due to emotional and cognitive factors. During
27      testing, the claimant demonstrated adequate-to-mildly diminished
28      attention, concentration, persistence and pace in completing tasks.

From a psychological point of view, the claimant displays symptoms
of depression and chronic pain complaints that may result in mild
impairment to effectively manage customary work stresses and persist
for a regular workday.  Given his reported work history and current
activities of daily living, the claimant seems capable of following a
routine and organizing himself for basic tasks.  However, given his
dysphoria and somatic complaints, the claimant may have difficulty
sustaining stamina and motivation.  The appropriate medical
specialist should evaluate the extent of any physical limitation upon
work functioning.

The claimant would be able to work independently.  Given his
report of irritability and proneness to interpersonal conflict, the
claimant may have mild limitations in sustaining cooperative
relationships with coworkers and supervisors.  He may function most
optimally in a semi-isolated work setting.

The claimant relates in an appropriate manner with supportive
authority figures, as demonstrated by his behavior with this evaluator.

The claimant appears capable for the self-management of
funds, given test results and self-report of ADL's.

(AR 134-35).

### 3.    Non-Examining Consultant Reports

On April 4, 2006, non-examining medical consultant Dr. C.H. Dudley,
completed a Psychiatric Review Technique Form.  (AR 144-57).  In response to a
question which called for "medical disposition" and included as possible
responses that (i) the claimant did not have a medically determinable impairment;
(ii) the claimant did not have a severe impairment; (iii) the claimant had a severe
impairment which was not expected to last 12 months; and (iv) a residual
functional capacity assessment was necessary, Dr. Dudley indicated that a residual

1   functional capacity assessment was necessary.[6]  (AR 144).  In terms of functional
2   limitations, Dr. Dudley opined that plaintiff had mild restrictions of activities of
3   daily living, mild difficulties in maintaining social functioning, mild difficulties in
4   maintaining concentration, persistence, or pace, and noted that there was
5   insufficient evidence to assess whether plaintiff had suffered episodes of
6   decompensation of extended duration.  (AR 154).  Dr. Dudley further noted in
7   summary, that plaintiff retained adequate cognitive ability for simple tasks, cross-
8   referencing a Mental Residual Functional Capacity Assessment ("MRFC
9   Assessment").  (AR 156).

10       On April 4, 2006, non-examining medical consultant Dr. Dudley completed
11   an MRFC Assessment which reflects that plaintiff was moderately limited in his
12   ability to understand, remember, and carry out detailed instructions but otherwise
13   was not significantly limited in understanding and memory, sustained
14   concentration and persistence, social interaction, and adaptation.  (AR 137-39).
15   Dr. Dudley elaborated as follow:

16       Claimant retains ability to understand, remember and follow simple
17       instructions, moderate difficulty with detailed, complex tasks, able to
18       maintain adequate concentration, persistence and pace doing simple
19       tasks, complete normal workday/workweek without significant
20       interruptions from psych based symptoms, interact appropriately with
21       supervisors, co-workers and the public, adapt to requirements of
22       normal workplace.

23   (AR 139).

24   ///

25

26

27       [6]A residual functional capacity assessment is typically performed at step four of the
    sequential evaluation process, *i.e.*, after an assessment has been made that an impairment is
28   sufficiently severe at step two to proceed with the sequential evaluation process.  See 20 C.F.R.
    § 416.920(e).

## B.     Administrative Hearing

At the September 5, 2007 administrative hearing, plaintiff testified:  The primary problem that has kept him from working the last couple of years was his inability to concentrate.  (AR 201).  He had received mental health treatment two weeks before the hearing at Augustus Hawkins.  (AR 201).  He had been there every month.  (AR 201).

The ALJ then advised plaintiff's counsel that the record ended in 2005 and that the only recent record was a January 2006 consultative examination, and inquired whether counsel had updated records.  (AR 201).  Counsel indicated that he had provided all records received based upon a July 2007 request.  (AR 202).  The ALJ noted that if, as plaintiff had testified, he had been seeing someone at Augustus Hawkins on a monthly basis, there should be some record or treating source opinion that would be relevant.  (AR 202).  The ALJ advised plaintiff's counsel that he would give counsel thirty (30) days to provide updated records, and that if such records were not provided, the ALJ would make a decision based on what was then before the ALJ.  (AR 202).

Plaintiff went on to testify:  He had pulled out his teeth with pliers because voices commanded him to do so and he feared he would "end up down in [an unknown] hole" if he did not do what the voices told him.  (AR 202-03).

The ALJ then advised plaintiff's counsel that, as far as pursuing the foregoing line of questioning regarding plaintiff's hearing of voices, the ALJ "[saw] the level of severity," but that the April 2005 Augustus Hawkins records, noted that they could not help plaintiff get disability benefits relating to his complaints of hearing voices unless he remained in treatment from nine (9) to twelve (12) months.  (AR 204).  The ALJ indicated that this way why the ALJ wanted to see the longitudinal record.  (AR 204).  Plaintiff's counsel acknowledged the ALJ's comments, reaffirming that he had thirty (30) days to provide the updated Augustus Hawkins records, and indicated that he would try to

1    get such records.  (AR 204).  The ALJ further explained that absent such records,

2    all the ALJ had to rely upon was the consultative psychologist who had opined

3    that plaintiff had only mild limitations.  (AR 204).  The ALJ again emphasized the

4    need for plaintiff's counsel to obtain the updated records from Augustus Hawkins.

5    (AR 204).  The ALJ went so far as to state that plaintiff would be provided with an

6    envelope addressed to the ALJ that plaintiff could then give to Augustus Hawkins

7    to send the ALJ plaintiff's updated records.  (AR 205).  The ALJ explained to

8    plaintiff that plaintiff should try to get the records to the ALJ by using the

9    envelope and that plaintiff's counsel would also try to get the records, so that there

10   were two ways the ALJ could get the records.  (AR 205).  The ALJ emphasized

11   multiple times how important it was for the ALJ to get such records and that if the

12   ALJ did not get those records, the ALJ had no choice in the case as without

13   medical evidence, the ALJ could not "help [plaintiff] out."  (AR 205-07).

14              **C.    The ALJ's Decision Relative to Plaintiff's Mental Impairments**

15              As noted above, the ALJ determined that plaintiff has not had an

16   impairment or combination of impairments that has significantly limited (or is

17   expected to significantly limit) the ability to perform basic work-related activities

18   for twelve (12) consecutive months, and therefore found that plaintiff has not had

19   a severe impairment or combination of impairments.  (AR 24).  In discussing

20   plaintiff's mental limitations, the ALJ noted that although plaintiff had been asked

21   at the administrative hearing to provide updated mental health treatment records,

22   none had been provided.  (AR 25).

23              As to plaintiff's mental impairments, the ALJ acknowledged that Dr.

24   Brawer diagnosed plaintiff with a depressive disorder and borderline intellectual

25   functioning.  (AR 23) (citing Exhibit 3F/5 [AR 134 – Dr. Brawer's report]).  She

26   noted that the record otherwise documented only fleeting mental health treatment

27   in 2005 and that such treatment did not document persistent symptoms and

28   ///

1  treatment consistent with the duration requirement.  (AR 23) (citing Exhibit 7F

2  [AR 161-75 – Augustus Hawkins records]); See supra notes 2, 3.

3        The ALJ discussed the opinions of Drs. Dudley and Brawer regarding any

4  functional limitations arising from plaintiff's mental impairments.  (AR 25).  The

5  ALJ noted that Dr. Dudley (referred to as a State Agency psychiatrist) had opined

6  that plaintiff had no significant limitation in performing work-related functions

7  except for moderate impairment with respect to understanding, remembering, and

8  carrying out detailed instructions, and that Dr. Brawer described plaintiff's mental

9  residual functional capacity in comparable terms .  (AR 25) (citing Exhibit 4F/1

10  [AR 137-39 – Dr. Dudley's MRFC Assessment] and Exhibit 3F/5-6 [AR 134-35 –

11  Dr. Brawer's report]).

12        In accordance with regulations governing an ALJ's determination of the

13  severity of a claimant's mental impairment, the ALJ expressly addressed plaintiff's

14  degree of limitation in the following four areas:  (1) activities of daily living;

15  (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of

16  decompensation.[7]  See 20 C.F.R. §§ 416.920a(c)-(d).  (AR 26).  The ALJ

17  determined, consistent with Dr. Dudley's opinions, that plaintiff suffered from

18  mild limitations in the first three functional areas.  (AR 26).  As to the fourth

19  functional area, the ALJ determined that plaintiff had experienced no episodes of

20  decompensation.  (AR 26).  The ALJ concluded that because plaintiff's medically

21  determinable mental impairments have caused plaintiff no more than mild

22  limitations in any of the first three areas, and no limitations in the fourth area, his

23  mental impairments were nonsevere.  (AR 26) (citing 20 C.F.R. § 416.920a(d)(1));

24  See supra note 7.

25

26  _____

27        [7]If the degree of limitation in these four areas is determined to be "mild," a plaintiff's
    mental impairment is generally not severe, unless there is evidence indicating a more than

28  minimal limitation in the ability to perform basic work activities.  See 20 C.F.R. § 416.920a(c)-
    (d).

13

# V.   DISCUSSION

## A.   The ALJ's Determination That Plaintiff Did Not Suffer from a Severe Mental Impairment Does Not Warrant a Reversal or Remand

Plaintiff contends that the ALJ's step two determination that plaintiff does not suffer from a severe impairment is erroneous and is not supported by substantial evidence because (1) Dr. Brawer diagnosed plaintiff with "borderline intellectual functioning" which, in and of itself, constitutes a severe mental impairment; and (2) the ALJ ignored Dr. Dudley's assessment that plaintiff suffered from a severe mental impairment – an assessment implicit in Dr. Dudley's failure to check a box indicating that plaintiff's impairment was non-severe and his determination that a residual functional capacity assessment was necessary.

This Court concludes that substantial evidence in the record supports the ALJ's determination that plaintiff did not suffer from a severe mental impairment and that the ALJ did not materially err in her assessment of Dr. Dudley's opinion.

### 1.   Substantial Evidence Supports the ALJ's Assessment That Plaintiff Did Not Suffer from a Severe Mental Impairment

Plaintiff contends that the ALJ's assessment that plaintiff did not suffer from a severe mental impairment at step two of the sequential evaluation process is not supported by substantial evidence.  This Court disagrees.

First, this Court rejects plaintiff's contention that borderline intellectual functioning is *per se* a severe impairment.  The cases upon which plaintiff relies to suggest otherwise are not binding upon this Court and are, in any event factually distinguishable.  Here, Dr. Brawer, the physician who diagnosed plaintiff with borderline intellectual functioning, opined that plaintiff could perform simple, repetitive tasks, that his ability to sustain attention and concentration for extended periods of time was only mildly diminished, that plaintiff had demonstrated adequate-to-mildly diminished attention, concentration, persistence and pace in

1  completing tasks, that he had only a mild impairment to effectively manage

2  customary work stresses and to persist for a regular workday, that plaintiff seemed

3  capable of following a routine and organizing himself for basic tasks, that he

4  would be able to work independently, that he might have mild limitations in

5  sustaining cooperative relationships with coworkers and supervisors, but related in

6  an appropriate manner with supportive authority figures, and that he appeared

7  capable of managing funds.  (AR 134-35).  Dr. Brawer thus effectively concluded

8  that plaintiff's borderline intellectual functioning did not significantly limit his

9  ability to perform basis work activities.  Tonapetyan v. Halter, 242 F.3d 1144,

10  1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted

11  substantial evidence, because it rested on independent examination of claimant).

12  This Court finds no error in the ALJ's determination that plaintiff's borderline

13  intellectual functioning, by itself, or when combined with plaintiff's other

14  impairments did not constitute a severe impairment as such a conclusion is

15  supported by Dr. Brawer's opinion which constitutes substantial evidence.

16       Second, plaintiff points to no medical evidence in the record and this Court

17  sees no medical evidence to satisfy the duration requirement, i.e., to establish that

18  plaintiff's mental impairments lasted or could be expected to last for a continuous

19  period of at least twelve months  – a prerequisite to being a "severe" impairment at

20  step two of the sequential evaluation process.  Accordingly, even if the evidence

21  established that plaintiff's mental impairments rendered him unable to perform

22  basic work activities at some point in time, the ALJ properly concluded that

23  plaintiff failed to meet his burden at step two because the record is bereft of any

24  evidence to satisfy the duration requirement.

25       As the ALJ had substantial evidence to find that the medical evidence

26  clearly established that plaintiff did not have a medically severe impairment or

27  combination of impairments, a remand or reversal on such basis is not appropriate.

28  ///

15

**2.    The ALJ Did Not Materially Err in Her Assessment of Dr. Dudley's Opinions**

Plaintiff contends that ALJ erred in her assessment of Dr. Dudley's opinion because Dr. Dudley implicitly determined that plaintiff suffered from a severe mental impairment by virtue of Dr. Dudley's failure to check a box indicating that plaintiff's impairment was non-severe and Dr. Dudley's determination that a residual functional capacity assessment was necessary.

First, the Court disagrees with plaintiff's contention that the above-described omission and conduct of Dr. Dudley necessarily implies that he found that plaintiff suffered from a severe impairment.  While the inference drawn by plaintiff is one inference that could be drawn from Dr. Dudley's actions and omissions, it is also reasonable to infer that Dr. Dudley (i) believed the evidence to be insufficient to make a definitive assessment regarding the severity or non-severity of plaintiff's mental impairments due to the lack of evidence regarding whether plaintiff had suffered episodes of decompensation of extended duration; and (ii) viewed the preparation of an MRFC Assessment to be necessary in light of his uncertainty in this regard.  (AR 154 [Dr. Dudley opining that evidence insufficient to assess whether plaintiff suffered from episodes of decompensation of extended duration]).  As the evidence reasonably supports either of the foregoing inferences, and as the latter inference supports the ALJ's determination that plaintiff does not suffer from a mental impairment of sufficient severity and duration to qualify as a severe impairment under step two of the sequential evaluation process, this Court cannot find that the ALJ erred in her assessment of Dr. Dudley's opinions.  See Robbins, 466 F.3d at 882 (if evidence can reasonably support either affirming or reversing the ALJ's conclusion, court may not substitute its judgment for that of the ALJ).

Second, even assuming the only inference to be drawn from Dr. Dudley's actions and omissions is that he determined that plaintiff suffered from a severe

impairment, any error by the ALJ in silently disregarding such ultimate step two determination was harmless as the ALJ considered and adopted Dr. Dudley's underlying opinions indicative of plaintiff's mental ability to perform basic work activities – an ability which renders plaintiff's impairments non-severe.  As noted above, Dr. Dudley opined that plaintiff had no more than mild limitations in activities of daily living, social functioning, and concentration, persistence and pace.  (AR 154).  Dr. Dudley also essentially opined in the MRFC Assessment that plaintiff had no significant limitations in his mental ability to perform basis work activities.  Dr. Dudley's underlying opinions point to a conclusion that plaintiff could perform basic work activities and did not suffer from a severe impairment.  See 20 C.F.R. §§ 416.920a(c)(4), 416.920a(d)(1), 416.921(b).

Accordingly, the ALJ's assessment of Dr. Dudley's opinions does not warrant a remand or reversal.

**VI.   CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 25, 2010

_____
/s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE